UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
THOMAS J. GERMANO,           :

           Plaintiff,           :    Civ. _____

                            :    **COMPLAINT**
          -against-        :    **WITH JURY DEMAND**

CORNELL UNIVERSITY, NEW YORK STATE  :
SCHOOL OF INDUSTRIAL AND LABOR   :    December 8, 2003
RELATIONS, EDWARD J. LAWLER, RONALD  :
SEEBER, and ANN W. MARTIN,        :

           Defendants.     :

------------------------------------------------------------- X

## COMPLAINT

Plaintiff Thomas J. Germano, by his attorneys, alleges as follows:

## THE NATURE OF THE ACTION

This is a civil action for damages and remedies brought under (1) the Age Discrimination in Employment Act ("ADEA"); (2) the New York State Human Rights Law; (3) the New York City Human Rights Law; (4) breach of contract; and (5) the common law of the state of New York.

## THE PARTIES

1.    Mr. Germano was born on February 18, 1940, and presently resides at 2 Jayme Drive, North Babylon, New York, 11703.  On October 7, 1976, Mr. Germano began working at the Cornell University School of Industrial and Labor Relations (the "ILR School").

2.      Cornell University ("Cornell") is a leading university of higher education with its main campus located in Ithaca, New York.

3.      Defendant the ILR School is the nation's only institution of higher education offering a full four-year undergraduate program in industrial and labor relations.  In addition, it offers several graduate degree programs. The faculty – specializing in personnel and human resource management, labor law and history, and social statistics – is the largest concentration of distinguished scholars in the field of industrial and labor relations.  The ILR School has Extension offices in the Buffalo, Rochester, Albany, Ithaca, New York City, and Long Island[1] ("Extension offices").

4.      Defendant Edward Lawler has served as the Dean of the ILR School from 1997 through the present.  Dean Lawler currently resides at 925 Mitchell Street, Ithaca, New York.

5.      Defendant Ronald Seeber is the former Associate Dean of the ILR School and the Executive Director of the Institute on Conflict Resolution.  Upon information and belief, Associate Dean Seeber is currently the Associate Dean of the ILR School or, in the alternative, the acting Associate Dean of the ILR School.  Associate Dean Seeber currently resides at 4370 Barford Road, Syracuse, New York.

6.      Defendant Ann Martin is a Senior Extension Associate at the ILR School and the former Associate Dean of the ILR Extension at the time Defendants terminated Mr.

---

[1] Upon information and belief, Cornell officially closed its Long Island Extension office on July 31, 2003.

2

Germano's employment.  Associate Dean Martin currently resides at 630 Snyder Hill Road, Ithaca, New York.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The amount in controversy exceeds $75,000.

8.     Mr. Germano filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 14, 2003.

9.     On or about September 11, 2003, the EEOC issued a Notice of Right-to-Sue to Mr. Germano.

10.     A copy of this Complaint was served on the New York City Commission on Human Rights and the Corporation Counsel.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Mr. Germano worked for the ILR school in New York and Cornell terminated his employment in the city and state of New York.

## FACTS

**Mr. Germano Begins**
**Working at Cornell in 1976**

12.     On October 7, 1976, Mr. Germano began working at Cornell and the ILR School as an Extension Associate I and Director of the ILR School Long Island Extension Office. Mr. Germano remained the Director of the Long Island office until January 13, 2003, when Cornell terminated his employment without cause.

13.     The ILR School refers to instructors who work at one of its Extension offices as "extension associates." Extension associates have professional qualifications comparable to those of professors and associate professors affiliated with Cornell. Their responsibilities include extension programming and administration (i.e., developing and implementing operating and administrative guidelines and procedures); recommending salaries and operating budgets; and providing expert and authoritative leadership and advice to government agencies, business, community and education organizations. The Director of an extension office makes executive decisions for that office.

14.     In 1988, Mr. Germano underwent the ILR School Extension's formal "peer review process" and, on July 1, 1988, was promoted to Senior Extension Associate II, which is the ILR School Extension's version of "tenure."

15.     At this time, Cornell and the ILR School led Mr. Germano to believe that he had tenure.

16.     Mr. Germano relied on Cornell's and the ILR School's representation, as told to Mr. Germano by Associate Deans Lois Gray and Ronald Seeber, that, once Cornell and the ILR School appointed him a Senior Extension Associate II, he had the

4

by constant pressure, threats and harassment regarding his age.  When her efforts failed, Cornell terminated Mr. Germano's employment because of his age.

21.     On November 2, 2000, Mr. Germano spoke with Associate Dean Martin at a meeting at the Claremont Hotel in Roslyn, New York.  She asked him how old he was and if he had plans to retire.  Associate Dean Martin repeated several times that he should consider retiring.  Mr. Germano asked her if she thought his performance was of no value.  She said this was not the case, but that "it's time" he retire.

22.     The next time Mr. Germano saw Associate Dean Martin, at a meeting in New York City on February 6, 2001, she asked him if he was considering her suggestion to retire.

23.     On April 18, 2001, Mr. Germano ate dinner with Associate Dean Martin in Midtown Manhattan.  She again asked Mr. Germano whether he planned on retiring.  When Mr. Germano told her he was not going to retire yet, she threatened to find someone else to do his work and that he should begin some serious retirement planning.

24.     On May 31, 2001, at a District Directors meeting in Ithaca, Associate Dean Martin asked Mr. Germano if he had done anything to prepare for his retirement.  Mr. Germano told her that he had not.

6

25.     On June 28, 2001, Mr. Germano met with Associate Dean Martin to discuss his goals for the past and upcoming year.  She asked if retirement was one of his goals.  Mr. Germano told Associate Dean Martin that retirement was not one of his goals.

26.     On December 5, 2001, at a District Directors meeting in New York City, Associate Dean Martin announced that a committee of which Mr. Germano was not a member would be meeting the next day to discuss, among other things, the future of the Long Island office.  Associate Dean Martin specifically told Mr. Germano that his attendance was not necessary, although he had been the Director of that Office for nearly 25 years.

27.     On December 18, 2001, Mr. Germano met with Associate Dean Martin at JFK Airport at around 12:30 p.m.  At this meeting, Associate Dean Martin told Mr. Germano that the Long Island Office would have to produce savings or increased income in the amount of $20-25,000 from January to June 2002 and function with one less employee.  Then Associate Dean Martin asked Mr. Germano if he was planning to retire. Yet again, he replied he was not.  In response, Associate Dean Martin threatened to break the lease and close the Long Island Office either partially or completely.

28.     Mr. Germano successfully reduced his operating costs by approximately $25,000 from January to June 2002, while working with one less employee.

29.     On January 12, 2002, at a dinner following a National Conference, a retiring union leader who was being honored spoke briefly.  At a table full of Mr.

7

Germano's colleagues and peers, Associate Dean Martin asked him from across the table, "When are you going to retire, Tom?" Before Mr. Germano could respond, Kathleen Devine, a Senior Extension Associate in the Long Island Office, who was also sitting at the table, said to Associate Dean Martin, "What is he the poster child for retirement? Don't you ever stop?"

30.     On January 23, 2002, Associate Dean Martin told Mr. Germano that if he would relinquish the position of Director she would stop harassing him to retire.

31.     On October 4, 2003, Associate Dean Martin met with Mr. Germano at the Long Island Office.  At this meeting, she told Mr. Germano that Dean Lawler had decided to close the Long Island Office to save money.  Associate Dean Martin stressed that the decision to close the Office was not made as a result of poor performance; in fact, she said that the office "was overachieving despite being understaffed."

32.     On October 9, 2002, Mr. Germano participated via conference call in a meeting of the Deans and Directors.  Dean Lawler said that ILR needed to save $500,000 and to do so some people might need to retire.  Associate Dean Martin said, "I know Tom Germano is sitting quietly in a great deal of pain, and I thank you for that, Tom.  I'm sure others are feeling for you as I am."

**Defendants Attempt to Terminate Mr. Germano's**

**Employment for "Financial Reasons"**

33.     On October 24, 2002, Mr. Germano received a letter from Dean Lawler, dated October 23, 2002, that stated that his (Mr. Germano's) employment had been

terminated effective July 1, 2003. According to this letter, Cornell terminated his employment for "financial reasons;" the termination letter does not mention performance or managerial problems.

34.     The only other employee from the Long Island Extension office whose employment was terminated at this time was Dolores DeLuca, a woman over 70 years old with approximately 2 1/2 years of service to Cornell. All other employees of the Long Island district office -- who were significantly junior to and younger than Mr. Germano -- were offered employment with the New York City district office.

35.     Upon information and belief, Cornell's suggestion that it terminated Mr. Germano's employment as a result of "financial conditions" was a pretext for discrimination.

36.     On November 1, 2002, Associate Dean Seeber requested an in-person meeting with Mr. Germano. Associate Dean Seeber traveled from Syracuse to the eastern tip of Montauk and met with Mr. Germano on November 2 for lunch at the Gurney's Inn.

37.     At this meeting, Associate Dean Seeber asked Mr. Germano if he (Mr. Germano) intended to sue him and indicated that Cornell and the ILR School were very worried about their liability concerning their treatment of Mr. Germano. As they parted ways in the parking lot of the Gurney's Inn, Associate Dean Seeber encouraged Mr. Germano to "sue the shit out of those bastards."

9

**The Long Island Labor Movement Insists Defendants**

**Do Not Terminate Mr. Germano's Employment**

38.     On November 14, 2002, Dean Lawler, Associate Dean Martin, and Rick Hurd, Statewide Labor Program Director, met with Jack Caffey, the President of the Long Island Federation of Labor, other members of the Federation, representatives of the Long Island Labor Advisory Board, and Mr. Germano.

39.     At this meeting, Mr. Caffey told the Deans (after they failed to offer any logical reason for closing the Long Island Office) that they had until December 31, 2002 to come up with a plan to keep the Office open, or the Long Island Labor Movement would actively lobby for an alternative provider of labor education on Long Island.  It was made clear to the Deans that any plan they devised must include, among other provisions, that Mr. Germano remain Director of the Long Island Office.

40.     Upon information and belief, on November 19, 2002, Cornell's statewide labor staff met by pictel and telephone from 1:30 to 3:45 p.m.  Towards the end of this meeting, Jeff Grabelsky, a Senior Extension Associate, proposed a "save face" for Dean Lawler in order to save him (Dean Lawler) from the impending trouble with the unions. Upon information and belief, Mr. Grabelsky proposed to keep the Long Island Office open and allow Mr. Germano "to retain his position of Director (or some other position)" until Dean Lawler and/or Associate Dean Martin could fire Mr. Germano with "due process."

10

**Defendants Still Intended to Terminate Mr. Germano's Employment**

41.     In December 2002, Dean Lawler's office in Ithaca instructed Mr. Germano to submit a budget for the Long Island Extension office by January 25, 2003. When Mr. Germano requested the information necessary to produce such a budget (i.e., whether Mr. Germano was permitted to hire employees necessary to fill vacancies in the office), Dean Lawler's Ithaca office failed to produce such information.

42.     Shortly thereafter, Dean Lawler's Ithaca office informed Mr. Germano that it would create the first draft of the budget for the Long Island Extension office.

43.     Upon information and belief, this was the first time since Mr. Germano became Director of the Long Island Extension office that he did not submit the first draft of the budget for the Long Island office.

44.     Upon information and belief, this was the first and only time that the budget for a district office did not originate from the Director of that district office.

45.     Upon information and belief, this was the first and only time that the Dean's office in Ithaca initiated the first draft of the budget for a district office in the ILR Extension.

46.     Upon information and belief, Defendants did not intend for Mr. Germano to remain in his position as Director of the Long Island Extension office.

11

## Mr. Germano Attempts to Fill Vacancies in His Office

47.     On December 23, 2002, Mr. Germano sent an email to Dean Lawler seeking confirmation that "[t]he current level of staff will be retained in the Long Island office during the period described above and the vacancy which has existed since April [could be filled]."

48.     According to Mr. Caffey, who had had several discussions with Dean Lawler regarding the Long Island Office, Mr. Germano had the authority to hire up to the current level of staff working at the Long Island Office at that time, plus fill the labor studies support position that had been vacant since April 2002.

49.     On December 24, 2002, Mr. Germano sent a letter to Margaret Sipser Leibowitz[2] and called Tina Hament to see if either or both would fill the one vacant position and one soon-to-be vacant position in the Long Island Office, respectively. Both were aware that any offer of employment Mr. Germano made was contingent upon approval from Cornell.[3] A copy of the letter Mr. Germano sent to Ms. Leibowitz was sent simultaneously to Dean Lawler.

---

[2] On December 24, 2002, Mr. Germano believed that Margaret Sipser Leibowitz, a former tenured Senior Extension Associate II, remained an employee of the ILR School. Ms. Leibowitz, who had taught at Cornell for over 20 years and had an unblemished reputation, currently has an age and gender discrimination case against Cornell and the ILR School pending in the Southern District of New York.

[3] Upon information and belief, on December 24, 2002, Ms. Leibowitz was an ILR employee. She had been teaching ILR classes in Ithaca in the fall 2002 semester. This led Mr. Germano to reasonably believe that Ms. Leibowitz qualified as a transfer, not a new hire, which, ordinarily, would have made it less burdensome to obtain Cornell's approval of her employment.

12

50.    On January 3, 2003, Dean Lawler responded to Mr. Germano's December 23rd email (referenced above).  Dean Lawler confirmed that pursuant to the December 19th agreement Mr. Germano had authority to "[k]eep current labor staffing during this period of time, including sufficient staff support."

51.    On January 6, 2003, Mr. Germano contacted Dean Lawler's office to confirm that he had authority to fill the labor staff support position that had been vacant since April 2002 (and needed to be filled before the start of the 2003 spring semester).

52.    Later that day, Cathey Mooney, who worked in Dean Lawler's office, emailed Mr. Germano that Dean Lawler would not permit Mr. Germano to fill this position and that Dean Lawler "will make no specific decisions about staffing in the Long Island office until the needs assessment for statewide labor is completed."

**Defendants Terminate Mr. Germano's Employment**

53.    On January 13, 2003, Mr. Germano met with former Associate Dean and newly appointed interim Director of the Great Lakes Region Office Ronald Seeber and Dean Lawler with his attorneys, David Marek and Harvey Mars, present.

54.    At this meeting, the Deans gave Mr. Germano a letter dated January 13, 2003, which terminated his employment effective immediately.  According to this letter, Cornell terminated Mr. Germano's employment because he offered Ms. Leibowitz a position at the Long Island Office for which she was qualified and that needed to be filled.

13

55.     When Defendants terminated Mr. Germano's employment, the Long Island Extension office was ahead of its budget projections for 2002/03.

56.     Upon information and belief, Cornell's suggestion that it terminated Mr. Germano's employment as a result of "a breach of [his] responsibilities" was a pretext for age discrimination.

57.     Upon information and belief, Cornell has discriminated against Mr. Germano because of his age.

## MR. GERMANO'S CLAIMS

### FIRST CAUSE OF ACTION

(Age Discrimination Under the ADEA)

58.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 though 57, as if separately set forth herein.

59.     At all relevant times, plaintiff was an "employee" of Cornell and the Cornell ILR under 29 U.S.C. § 630(f) of the ADEA.

60.     Cornell and Cornell ILR are both "employers" subject to the provisions of the ADEA under 29 U.S.C. §630(b).

14

61.     By its actions detailed above, including Cornell's, the ILR Schools, and Associate Dean Martins' harassment of Mr. Germano to retire, Defendants' decision to terminate Mr. Germano's employment in late 2002, and Defendants termination of Mr. Germano's employment in January 2003, Cornell and the ILR School have unlawfully discriminated against plaintiff on the basis of his age in violation of the ADEA.

62.     As a result of the discrimination described above, plaintiff has suffered a substantial loss of earnings and benefits and may continue to suffer such losses in the future.  Accordingly, Cornell and the ILR School are liable to plaintiff for both back pay and front pay in amounts as yet undetermined, plus attorneys' fees, prejudgment interest and costs.

63.     Cornell and the ILR School's conduct in discriminating against plaintiff on the basis of his age was willful, entitling Mr. Germano to an additional sum of liquidated damages pursuant to 29 U.S.C. § 626(b).

## SECOND CAUSE OF ACTION

(Age Discrimination Under
the New York State Human Rights Law)

64.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 75, as if separately set forth herein.

65.     At all relevant times, plaintiff was an "employee" for purposes of § 296 of the New York State Human Rights Law.

66.     Defendants are "employers" for purposes of § 292 of the New York State Human Rights Law.

67.     By their actions detailed above, Defendants have unlawfully discriminated against plaintiff on the basis of his age in violation of Section 296 of the New York State Human Rights law.

68.     As a result of the willful discrimination described above, plaintiff suffered substantial loss of earnings and benefits, and he may continue to do so in the future.  Accordingly, Defendants are liable to plaintiff for both back pay and front pay in an amount as yet undetermined, mental and emotional anguish, plus interest and costs.

## THIRD CAUSE OF ACTION

(Age Discrimination Under
the New York City Human Rights Law)

69.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 80, as if separately set forth herein.

70.     Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

71.     Defendants are "employers" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

16

72.     By their actions detailed above, Defendants have unlawfully discriminated against plaintiff on the basis of his age in violation of the New York City Human Rights Law.

73.     As a result of the discrimination described above, Plaintiff has suffered substantial damages, including emotional distress and mental anguish, in an amount to be determined at trial.

74.     Defendants' actions described above constitute discrimination against him on the basis of his age and were taken with reckless indifference to Mr. Germano's rights, entitling him to punitive damages under the New York City Human Rights Law.

**FOURTH CAUSE OF ACTION**
(Breach of Contract)

75.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 86, as if separately set forth herein.

76.     Cornell and the ILR School appointed Mr. Germano a Senior Extension Associate II after he successfully completed the peer review process.

77.     Pursuant to the policies of Cornell and the ILR School, a Senior Extension Associate II is a tenured faculty member.

17

78.     Accordingly, Cornell and the ILR School entered into a contract with Mr. Germano whereby the school guaranteed Mr. Germano employment for life, notwithstanding termination for cause and/or budgetary exigencies.

79.     Cornell and the ILR School breached their agreement with Mr. Germano when they terminated his employment on January 13, 2003 without cause.

80.     Mr. Germano is therefore entitled to the full value of the contract.

81.     Cornell and the ILR School's breach caused Mr. Germano damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
(Breach of an Implied-in-Fact Contract)

82.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 93, as if separately set forth herein.

83.     If this Court does not find the existence of an express contract between Cornell and the ILR School and Mr. Germano, Cornell and the ILR School also entered into an implied-in-fact contract with Plaintiff.

84.     Cornell and the ILR School's conduct indicated to Mr. Germano that he was a tenured faculty member of Cornell and the ILR School.

18

85.   Moreover, other Senior Extension Associates II who underwent the peer review process have been treated as if they had tenure.

86.   Accordingly, Mr. Germano relied on Cornell and the ILR School's conduct and reasonably believed he had the equivalent of tenure and, therefore, could only be fired for cause or budgetary exigencies.

87.   Cornell and the ILR School breached their agreement with Mr. Germano by terminating his employment as a Senior Extension Associate II without cause.

88.   Cornell and the ILR School are therefore liable to Mr. Germano for the full value of the implied contract.

89.   Plaintiff seeks damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.   On the First Cause of Action for violation of ADEA, back pay and front pay in an amount to be determined at trial, attorneys' fees, costs, prejudgment interest and liquidated damages;

B.   On the Second Cause of Action for violation of the New York State Human Rights Law, back pay and front pay in an amount to be determined at trial, and damages resulting from Plaintiff's mental and emotional anguish, plus interest and costs;

19

C.    On the Third Cause of Action for violation of the New York City Human Rights Law, damages in an amount to be determined at trial, and damages resulting from Plaintiff's mental and emotional anguish, plus punitive damages, interest and costs;

D.    On the Fourth Cause of Action for breach of contract, damages in an amount to be determined at trial;

E.    On the Fifth Cause of Action for breach of an implied-in-fact contract, damages in an amount to be determined at trial; and

F.    All such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        December 8, 2003

                              LIDDLE & ROBINSON, L.L.P.

                              By: _____
                                  Jeffrey L. Liddle (JL 8256)
                                  David Marek   (DM 2083)
                              Attorneys for Plaintiff
                              685 Third Avenue
                              New York, New York 10017
                              (212) 687-8500

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

THOMAS J. GERMANO,                                          :
                                                            :
                  Plaintiff,                                :
                                                            :
            -against-                                       :        Affidavit of service by hand
                                                            :
CORNELL UNIVERSITY, NEW YORK STATE                          :
SCHOOL OF INDUSTRIAL AND LABOR                              :
RELATIONS, EDWARD J. LAWLER, RONALD                         :
SEEBER, and ANN W. MARTIN,                                  :
                                                            :
                  Defendants.                               X

------------------------------------------------------------

**Peter Jarrett,** being duly sworn deposes and says:

1. I am not a party to the above referenced action, am over 18 years of age, and reside at 9 Armstrong Court, Norwalk CT 06851.

2. On December 9, 2003, I personally served the **COMPLAINT WITH JURY DEMAND** on the following:

Corporation Counsel of New York City          NYC. Commission on Human Rights
100 Church Street, Room 4313                  40 Rector Street, 9th Floor
New York, NY 10007                            New York, New York 10006

_____
                                              Peter Jarrett

Sworn to before me this
9th day of December, 2003

_____
NOTARY PUBLIC

ROSE M. REVERENDO
NOTARY PUBLIC, State of New York
No. 31-4908329
Qualified in New York County
Commission Expires _____